UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

JOHAN ANDRES REYES PRECIADO,

Petitioner,

v.

TODD BLANCHE, U.S. Attorney General; JASON KNIGHT, Field Office Director of Enforcement and Removal Operations, Salt Lake City Field Office, Immigration and Customs Enforcement; KENNETH PORTER, Director of the Boise U.S. Immigration and Customs Enforcement Field Sub-Office; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; MIKE HOLLINSHEAD, Sheriff of Elmore County,

Respondents.

Case No. 1:26-cv-00624-BLW

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

Before the Court are Petitioner Johan Andres Reyes Preciado's Petition for Writ of Habeas Corpus (Dkt. 1) and Motion for Temporary Restraining Order

(TRO) (Dkt. 2). For the reasons explained below, the Court will grant the Petition in part and deny the TRO as moot.

## BACKGROUND

Petitioner, a native and citizen of Colombia, entered the United States without inspection in November 2022. Dkt. 5 at 2. He was detained by U.S. Border Patrol near Calexico, California, and subsequently released on an Order of Release on Recognizance (OREC). *Id.*

Petitioner's OREC contained certain conditions. As relevant here, he was required to report for any interview as directed by the Department of Homeland Security (DHS) and receive written permission from Enforcement and Removal Operations (ERO) Houston before changing his residence. *Id.* The OREC made clear that failure to comply with these conditions could result in revocation of Petitioner's release and his arrest and detention by DHS. *Id.* at 3.

Petitioner reported to ERO Houston in November 2022, as required by the OREC. *Id.* He was then ordered to report back there on June 14, 2023. *Id.*

In May 2023, Petitioner filed a pro se motion for change of venue with the Houston Immigration Court, indicating that he was residing in Marsing, Idaho. *Id.* An immigration judge granted the motion and transferred venue to the Salt Lake City Immigration Court, which had jurisdiction over Idaho at the time. *Id.*

Meanwhile, Petitioner failed to notify ERO Houston of his change of address. *Id.* He also failed to report to ERO Houston for his appointment on June 14, 2023. *Id.*

Respondents maintain that they heard nothing from Petitioner until September 21, 2026, when the Owyhee County Sheriff's Office contacted ERO Boise after deputies encountered Petitioner during a traffic stop. *Id.* Immigration Customs and Enforcement (ICE) subsequently apprehended Petitioner and revoked his conditional release. *Id.*

Petitioner now invokes this Court's habeas jurisdiction, challenging his detention and seeking release from custody. *See* Dkts. 1, 2. He asserts that Respondents already granted him release on his own recognizance and have arbitrarily rescinded that release in violation of his due process rights. Dkt. 2-1 at 5.

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). Throughout the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Id.*

## ANALYSIS

This Court has addressed dozens of similar habeas petitions recently, all relating to the detention provisions of 8 U.S.C. §§ 1226(a) and 1225(b)(2). Before the Ninth Circuit decided *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), the Court repeatedly held that unadmitted noncitizens apprehended in the interior of the United States are governed by the discretionary detention framework of § 1226(a) as opposed to the mandatory detention framework of § 1225(b)(2). The Ninth Circuit reached the same conclusion in *Rodriguez Vazquez*, holding that "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Id.* at 1165.

Respondents contend that Petitioner remains subject to detention under § 1225(b)(2) because he was apprehended near the border in 2022. Dkt. 5 at 4. They assert that Petitioner's "initial entry controls the applicable detention scheme." *Id.* at 6.

But the fact that Petitioner was released on his own recognizance undermines that assertion. Indeed, Respondents themselves note that the sole means of release from mandatory detention under § 1225(b)(2) is temporary parole "for urgent humanitarian reasons or significant public benefit." *Id.* at 5 (citing

*Jennings v. Rodriguez*, 583 U.S. 281, 283 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A))). Nothing in the record shows that either rationale applied in this case. Accordingly, the Court finds that Petitioner was initially detained under § 1226(a).

The question, then, is what process Petitioner was entitled to prior to being arrested and redetained on September 21, 2026.

Under § 1226(b), "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 18 U.S.C. § 1226(b). The statute's implementing regulations add that "when an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of [certain immigration officials], in which event the alien may be taken into physical custody and detained." 8 C.F.R. § 236.1(c)(9).

In fact, "[n]othing in the brief text of [§ 1226(b)] and the accompanying regulations suggests that procedural protections such as notice of the intention to revoke parole, service of the evidence justifying revocation, and a hearing before a neutral arbitrator are required prior to re-arrest and redetention." *O.F.C. v. Almodovar*, No. 25-cv-9816, 2026 WL 74262 at *6 (S.D.N.Y. Jan. 9, 2026).

That is not to say that the Government's authority to revoke release under § 1226(b) is unbridled. Although § 1226(b) itself does not require a pre-deprivation hearing, it still requires some process—namely, that there be an individualized determination regarding the noncitizen's dangerousness or flight risk. The statute indicates that bond "may" be revoked, which this Court and others have interpreted to require the Attorney General to make "some level of individualized determination." *Id.* at 7. In the context of a bond revocation under § 1226(b), any individualized determination requires not only a finding of dangerousness or flight risk, but also changed circumstances given that an immigration official or judge previously found that the individual did not pose a risk of danger or flight. *Id.*

Here, the Government has asserted a legitimate basis for its finding that Petitioner posed a flight risk. Specifically, Respondents allege that Petitioner violated the conditions of his OREC by changing his address without written permission and failing to maintain required contact with DHS. Dkt. 5 at 2.

Petitioner does not dispute that he breached the conditions of his OREC. Instead, he contends that the alleged breaches are insufficient to justify revocation of his release. Dkt. 6 at 7.

The terms of the OREC were clear, though: Petitioner was required to report for any interview as directed by DHS and receive written permission from ERO

Houston before changing his residence. What is more, the OREC stipulated that failure to comply with these conditions could result in revocation of Petitioner's release and his arrest and redetention. Thus, under § 1226(b) and its implementing regulations, the only process to which Petitioner was entitled was an individualized determination as to whether he posed a risk of danger or flight.

Because DHS appears to have made an individualized determination that Petitioner presented a flight risk, the Court cannot say with certainty that release is the appropriate remedy. Therefore, the Court will grant Petitioner's petition for writ of habeas corpus in part and order the Government to provide him with an individualized bond hearing before an immigration judge within seven days of this Order.

If the detainee demonstrates by a preponderance of the evidence that he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the immigration judge will order his release. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (citation omitted).

## ORDER

**IT IS ORDERED that:**

1. Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1) is **GRANTED**. The Government must either release Petitioner or provide him with an individualized bond hearing pursuant to 8 U.S.C. § 1226 which comports with basic due process requirements within seven (7) days of the date of this Order.

2. The government shall file a status report within ten (10) days of the date of this Order confirming compliance with the Order. The status report shall detail if and when the ordered bond hearing occurred, if bond was granted or denied, and if denied, the reason for that denial.

3. Petitioner's Motion for Temporary Restraining Order (Dkt. 2) is **DENIED AS MOOT**.

DATED: October 26, 2026

B. Lynn Winmill
U.S. District Court Judge